**BATH PETROLEUM STORAGE, INC. and E.I.L. Petroleum, Inc., Plaintiffs,**

v.

**Gregory H. SOVAS, individually and as Director of the Division of Mineral Resources, New York State Department of Environmental Conservation; Bradley J. Field, individually and as Acting Director of the Bureau of Oil and Gas Regulation, Division of Mineral Resources, New York State Department of Environmental Conservation; Thomas W. Pearson, individually, and as Regional Water Engineer, Region 8, Division of Water, New York State Department of Environmental Conservation; John Cahill, individually**

---

and as Commissioner of the New York State Department of Environmental Conservation; New York State Department of Environmental Conservation; and The State of New York, Defendants.

No. 98CV347LEKRWS.

United States District Court, N.D. New York.

March 21, 2001.

John J. Privitera, McNamee, Lochner Law Firm, Albany, NY, W. Michael Holm, Jerry William Boykin, Womble, Carlyle Law Firm, McLean, VA, for Plaintiffs.

Kathleen Liston Morrison, Office of Attorney General, Albany, NY, Joseph S. Koczaja, State of New York, Department of Law, Albany, NY, for Defendants.

### *MEMORANDUM—DECISION AND ORDER*

KAHN, District Judge.

Presently before the Court is Plaintiffs' motion for reconsideration. For the following reasons, Plaintiffs' motion is GRANTED.

## I. BACKGROUND

### A. *Factual History*

Plaintiffs own and operate a liquid petroleum gas ("LPG") storage facility in Bath, New York. As discussed in this Court's prior decisions, Plaintiffs received permission from defendant New York State Department of Environmental Conservation ("NYDEC") to expand this facility in 1992. Four years later, Plaintiffs entered into a contract with CNG Transmissions Corporation ("CNG"). Under the terms of this contract CNG, was going to utilize Plaintiffs' facilities to store natural gas.

Because the storage facilities, as constructed, could not accommodate the needs of CNG, Plaintiffs submitted a permit modification application to defendant DEC requesting permission to alter their facilities. Defendant DEC refused to grant Plaintiffs' permit application, in part, because it felt that sonar testing was needed to ensure that the underlying caverns in which Plaintiffs' facilities were located

were safe. Defendant DEC also refused to grant Plaintiffs their permit because they had not supplied it with a State Pollution Discharge Elimination System ("SPDES") permit application. Because of these regulatory delays, CNG ultimately backed out of its agreement with Plaintiffs and the natural gas project fell through.

### B. *Procedural History*

In 1998, after Plaintiffs' deal with CNG collapsed, they commenced the instant suit asserting five federal causes of action and two pendent state law causes of action against Defendants. Counts one and two sought declaratory relief from this Court on the ground that the State's imposition of various construction modification requirements on Plaintiffs was preempted by 42 U.S.C. § 300(h)(b)(2) and 15 U.S.C. § 717, et seq. Plaintiffs' third claim sought injunctive relief against defendants Sovas and Field on the ground that they violated Plaintiffs' due process rights while their fourth and fifth claims sought damages from defendants Sovas, Field, and Pearson under 42 U.S.C. § 1983.

Plaintiffs' pendent state law claims alleged that Defendants violated New York State's Administrative Procedure Act ("NYSAPA") when they compelled Plaintiffs' to comply with their directives without, in part, first creating a regulatory impact statement. Plaintiffs' second pendent state law claim alleged that Defendants violated their state due process rights codified under Article 1, § 6 of the New York State Constitution. This Court dismissed all of Plaintiffs' claims on January 10, 2000 on the grounds that CNG's withdrawal from the natural gas project made the entire case unripe for judicial review. Plaintiffs' current motion seeks reconsideration of that decision.

## II. DISCUSSION

### A. *Standard for Reconsideration*

■ Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The "clearly erroneous" standard of review applies to motions for reconsideration. The moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

■ Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. 1, 3 (N.D.N.Y.1995). Defendants' basis for this motion is that this Court made a clear error of law or needs to correct a manifest injustice because of significant errors contained in the Court's earlier decision. Although this Court enjoys broad discretion when making a determination to reconsider on this ground, *Von Ritter v. Heald*, 876 F.Supp. 18, 19 (N.D.N.Y.1995), it will not disregard the law of the prior case unless "the Court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981).

### B. *Ripeness of Plaintiffs' Claims*

■ Section 2201 of the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The primary purpose of the Act is to allow courts to declare a party's rights that have not been already determined. *See United States v. Doherty,* 786 F.2d 491, 498 (2d Cir.1986). It is designed to allow a party who is challenged, threatened, or endangered in the employment of his rights, "to initiate proceedings against his tormentor and remove the cloud by an authoritative determination" of his legal rights. *See id.* at 498–99 (quoting Borchard, *Declaratory Judgments* 280 (2d ed.1940)).

Before a Court may make a declaratory judgment, however, a case must present an "actual controversy." *See* 28 U.S.C. § 2201(a); *Fusco v. Rome Cable Corp.,* 859 F.Supp. 624, 629 (N.D.N.Y. 1994). The actual controversy requirement is the same as the "case and controversy" requirement of article III, § 2 of the United States Constitution. *See Gilbert Segall and Young v. Bank of Montreal,* 785 F.Supp. 453, 458 (S.D.N.Y.1992). Although the precise contours of the term "actual controversy" are difficult to discern, when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," a declaratory judgment may issue. *Olin Corp. v. Consol. Aluminum Corp.,* 5 F.3d 10, 17 (2d Cir.1993) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). In this Circuit, "a court *must* entertain a declaratory judgment action if it would be useful in clarifying and settling legal relations in the case, or if it would terminate the uncertainty, insecurity, and controversy that brought about the proceeding." *Albradco,*

*Inc. v. Bevona,* 982 F.2d 82, 87 (2d Cir. 1992) (emphasis added).

Defendants argue, and this Court initially concluded, that because CNG backed out of its contractual obligations with Plaintiffs, any harm to them regarding Defendants' sonar testing and SPDES requirements was speculative. *See Bath Petroleum Storage, Inc. v. Sovas,* 78 F.Supp.2d 67, 69 (N.D.N.Y.2000). In essence, the Court concluded that Plaintiffs had no intent to complete its conversion project after CNG backed out and that, until a replacement for CNG was found, Plaintiffs could not claim that they were suffering a "continuing, existing, and real injury." *See id.* The Court's basis for this conclusion was legally and factually erroneous.

Factually, Plaintiffs provided this Court with numerous letters and affidavits indicating that it intends to continue with the conversion project notwithstanding the fact that CNG does not wish to store natural gas in the converted facilities. Particularly, the Court notes that Plaintiffs, by letter dated April 10, 1998, explicitly rejected any pretense of abandoning the conversion project after CNG's withdrawal and have not abandoned their position during the course of this lengthy litigation. Thus, but for Defendants' imposition of allegedly unlawful sonar testing and SPDES requirements, Plaintiffs assert that they could proceed with their project. Legally, this is a continuing, existing, and real injury and the Court should not have deemed Plaintiffs' claims for declaratory and other relief unripe for judicial review. Accordingly, the Court reconsiders its earlier determination that Plaintiffs' claims were unripe for judicial review and turns to the merits of Defendants' original motion to dismiss.[1]

---

1. Because none of Defendants' additional arguments, raised in their original motion to

C. *Plaintiffs' Claims Against the State of New York and the New York Department of Environmental Conservation*

The Eleventh Amendment to the United States Constitution declares that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to prevent federal courts from exercising jurisdiction over suits brought by citizens of a state against the state or the state's agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Edelman v. Jordan*, 415 U.S. 651, 652–53, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10–11, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Relying on this well-settled principle of law, Defendants argue that Plaintiffs' claims against the State of New York must be dismissed.[2] In response, Plaintiffs claim that the New York Court of Appeals' decision in *Brown v. State of New York*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996) effectuated a waiver of the State of New York's sovereign immunity as to its second pendent state law claim.[3]

The Court disagrees with Plaintiffs' reading of *Brown*. In *Brown*, the New York Court of Appeals crafted a private right of action against the State of New York for violations of the equal protection and search and seizure provisions of New York State's Constitution. *See id.* at 187–89, 652 N.Y.S.2d 223, 674 N.E.2d 1129. In creating this cause of action, the Court of Appeals relied heavily upon the Supreme Court's analysis in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Brown*, 89 N.Y.2d at 187–89, 652 N.Y.S.2d 223, 674 N.E.2d 1129. The *Brown* Court asserted that implying a damages remedy against New York State for violations of the equal protection and search and seizure provisions of the New York Constitution "was 'necessary' in order to ensure the full realization of th[at] class of plaintiff's constitutional rights." *Wahad v. Federal Bureau of Investigation*, 994 F.Supp. 237, 239 (S.D.N.Y.1998) (citing *Brown*, 89 N.Y.2d at 189, 652 N.Y.S.2d 223, 674 N.E.2d 1129).

This rationale is inapplicable to the facts of this case. Here, unlike *Brown*, Plaintiffs have stated a viable Section 1983 claim against defendants Sovas and Field for the alleged due process violations.[4] Accordingly, the Court declines to imply a private right of action against the Sovereign Defendants under the due process clause of New York's Constitution and dis-

dismiss, are applicable to Plaintiffs' first and second federal causes of action, they are hereby reinstated and the case is reopened as to these two counts.

2. Although not specifically addressed in Defendants' moving papers the Court notes that because the New York State Department of Environmental Conversation is an agency of the State of New York, it is also protected by the 11th Amendment. Thus, the following 11th Amendment analysis applies to both the State of New York and the New York State Department of Environmental Conversation (collectively "Sovereign Defendants").

3. Plaintiffs concede that the 11th Amendment bars their other claims against the Sovereign Defendants. As a result the Court dismisses all five of Plaintiffs' federal claims and Plaintiffs' first pendent state law claim against the Sovereign Defendants.

4. That the Court chooses to abstain from deciding this claim at the moment, for reasons discussed below, does not negate this fact.

misses Plaintiffs' second pendent state law claim against them. *See Wahad,* 994 F.Supp. at 240; *Remley v. State,* 174 Misc.2d 523, 526, 665 N.Y.S.2d 1005 (N.Y.Ct.Cl.1997).

### D. *Plaintiff's Claims Against Defendant Cahill*

■ Defendants' motion papers seek to dismiss Defendant Cahill from this entire action based upon the fact that Plaintiffs alleged respondeat superior liability against him. Although the law is settled that a section 1983 claim against defendant Cahill cannot be based on respondeat superior or vicarious liability, *see Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989), the Court's reading of Plaintiffs' complaint does not indicate that they alleged a section 1983 complaint against him.[5] To the extent that it does, those claims against him are dismissed. The Court expresses no opinion as to whether the remaining claims against defendant Cahill are deficient, as Defendants have not properly raised that issue.

### E. *Defendants' Immunity Defenses*

#### 1. Plaintiffs Fourth Cause of Action

■ The affirmative defense of qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In short, the Constitutional right "must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness

of his actions was evident." *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). To determine whether a particular right was clearly established at the time of the alleged violation, courts should consider:

(1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991)

[11] Plaintiffs' fourth cause of action asserts that Defendants Sovas and Field knowingly violated their 14th Amendment right to due process of law by unlawfully imposing permit modification requirements on them in violation of the NYSAPA. In order to avoid defendant Sovas' and Field's qualified immunity defense, Plaintiffs must, in part, reasonably identify a constitutionally protected property interest in having the NYSAPA guide the defendants' decision to impose sonar testing and other requirements on them. *See Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999). This, they cannot do.

Under New York State Environmental Conservation Law, the Department of Environmental Conservation was entitled to ask Plaintiffs for "such other information as the department may require" when it ruled on their permit application. *See* N.Y.Envtl.Conserv.Law § 23–1301(1)(d) (McKinney 1997). Whether the Departments' request for sonar testing was with-

---

**5.** Of the five federal causes of action contained in the complaint, the first two name all the above captioned defendants and are for declaratory judgment. The third seeks pro-spective injunctive relief against defendants Sovas and Field while the fourth and fifth seek monetary damages under section 1983 against defendants Sovas, Field, and Pearson.

in its discretion under this or another section of New York State's Environmental Conservation Law, the Court does not hazard a guess. Suffice it to say, it is at least arguable, if not highly likely, that the Department of Environmental Conservation acted within its discretion when ordering Plaintiffs to provide it with this information.

Nevertheless, because New York's courts have never addressed this issue, this Court concludes that Plaintiffs have not shown that defendants Sovas and Field acted so far afield of their statutory mandate that they should have known that ordering Plaintiffs to provide them with sonar testing information before issuing the proposed facility modification permit violated Plaintiffs' 14th Amendment substantive due process rights.[6] Consequently, they are entitled to qualified immunity for their decision requiring Plaintiffs to provide them with this information before issuing the permit. *See Berman Enters. v. Jorling*, 3 F.3d 602, 607 (2d Cir.1993). As a result, the Court dismisses Plaintiffs' fourth cause of action.

### 2. Plaintiffs' Fifth Cause of Action

Plaintiffs' fifth cause of action asserts that defendant Pearson filed a retaliatory administrative claim against them with New York State's Department of Environmental Conservation because of his desire to impose burdensome and illegal SPDES requirements on them and otherwise harm their business. Defendant Pearson claims that because he is, in effect, a prosecutor, absolute immunity protects him from this claim. In the alternative, he argues that qualified immunity protects him from any liability for this claim.

The Court holds that defendant Pearson is entitled to absolute immunity for any actions he took in initiating an administrative claim against Plaintiffs. The rationale underpinning this holding rests upon the fact that defendant Pearson's function in initiating an enforcement action against Plaintiffs for their alleged violation of various provisions of New York's Environmental Conservation Law is akin to that of a prosecutor. *See Forrester v. White*, 484 U.S. 219, 228, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Such an enforcement action takes place before a New York State administrative law judge, the functional equivalent of a court, and Courts have granted individuals that decide to initiate such proceedings absolute immunity for any claim arising out of that decision on the grounds that they are acting in a prosecutorial capacity. *See Cohen v. Bane*, 853 F.Supp. 620, 627 (S.D.N.Y.1994); *Connolly v. Beckett*, 863 F.Supp. 1379, 1382 (D.Colo.1994); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir.1991); *Cf. Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir.1995). Accordingly, Plaintiffs' fifth cause of action, asserted against defendant Pearson, is dismissed.[7]

---

**6.** It is also unclear whether the Department of Environmental Conservation exceeded its authority when it required Plaintiff to submit a SPDES permit application before issuing the construction modification permit. Pursuant to New York Environmental Conservation Law §§ 17–0801, 0802, and 0807, the New York Department of Environmental Conservation has broad authority to set standards and regulate the discharge of pollution in the state. *See* N.Y.Envtl.Conserv.Law §§ 17–0801, 17–0802, and 17–0807 (McKinney 1997). Thus, the Court cannot conclude that defendant Sovas' and Field's decision to impose this requirement on Plaintiffs violated sufficiently definite constitutional rights to warrant removal of their qualified immunity.

**7.** Moreover, since none of Plaintiffs' remaining causes of action allege that defendant Pearson was responsible for the violations contained therein, they are dismissed to the extent that they assert causes of action against him.

*F. Defendants Remaining Section 1983 Defenses*

Plaintiffs' third cause of action seeks prospective injunctive relief under 42 U.S.C. § 1983 from the Court against defendants Field and Sovas, barring them from violating their 14th Amendment rights.[8] Defendants argue that this claim should be dismissed for three reasons. First, Defendants believe that because the alleged due process violation requires the Court to interpret conflicting and uninterpreted state statutes, abstention is appropriate. Next, defendants argue that this cause of action does not assert any violations of federal law. Finally, defendants argue that Plaintiffs cannot bring this claim because adequate state remedies are available to protect them. Because the Court concludes that abstention is appropriate, it does not address Defendants' alternative grounds for dismissal.

1. Pullman Abstention

Abstention under *Pullman* is proper when a litigant can bring a state proceeding with reasonable promptness, and a decision on an unsettled question of state law may moot the federal case. *See Berman Enters., Inc. v. Jorling*, 793 F.Supp. 408, 413 (E.D.N.Y.1992). Once a court abstains, the plaintiff usually must file a state court action "and expose the federal constitutional issue so that the state court 'may interpret the statute in light of the constitutional objectives presented.'" *Id.* at 413–14 (quoting *Government & Civic Employees Org. Comm. v. Windsor*, 353 U.S. 364, 366, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957)).

Plaintiffs third cause of action, like his fourth, raises serious questions regarding the scope of defendant Sovas' and Field's power to issue directives pursuant to New York's Environmental Conservation Law. If a state court determines that defendants Sovas and Field had authority to issue the orders here, Plaintiffs' due process claim will fail. Alternatively, if a state court determines that they lacked that authority, their due process claim might succeed. It is because New York's courts have not had occasion to provide an authoritative interpretation of these statutes that abstention is warranted.

Ordinarily, dismissal of a claim is not proper when a Court decides to utilize the *Pullman* abstention doctrine. *See Berman Enters.*, 3 F.3d at 608. Instead, the district court stays the federal proceedings in order to allow the parties to resolve the difficult issues of state law in state court. *See id.* Then, either the federal claim is mooted or the parties return to federal court in order to resolve any remaining federal issues. *See id.* Here, however no federal damages claims remain because even if it is determined that defendants Sovas and Fields did violate Plaintiffs' due process rights, they are, for reasons discussed above, entitled to qualified immunity.

Moreover, assuming that Plaintiffs do expeditiously file causes of action in state court resolving these state law issues, the state court may issue an injunction against defendants Sovas and Field for their alleged violations of these laws. Retaining jurisdiction over Plaintiffs' third cause of action in these circumstances "makes no

8. Plaintiffs' complaint does not indicate whether it is in fact seeking this relief under section 1983 or under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Defendants' moving papers characterize this claim as a section 1983 claim and Plaintiffs' opposition papers do not challenge this characterization. The Court will therefore treat Plaintiffs' third cause of action as arising under section 1983 for purposes of this motion.

sense," as Plaintiffs, after receiving their injunctive relief in state court and returning back to this Court, could not receive further injunctive relief here. *See id.* Accordingly, it is dismissed.

### 2. Burford Abstention

The *Burford* doctrine allows federal courts to abstain from deciding issues raised when the issue "so clearly involves basic principles of [state] policy that equitable discretion should be exercised to give the [state] courts the first opportunity to consider them." *Burford v. Sun Oil Co.,* 319 U.S. 315, 332, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Although it is not entirely clear whether dismissal is "mandated" when a Court invokes the *Burford* abstention doctrine, it is clear that if no claims for money damages remain dismissal is warranted. *Compare Berman Enters.,* 793 F.Supp. at 413 (holding that dismissal is mandatory when *Burford* is invoked), *with 767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia,* 218 F.3d 152, 163 (2d Cir. 2000) (noting that when federal courts apply abstention principles "they may enter a stay, but are usually not permitted to dismiss the action altogether if the action is for money damages.") In this case, Plaintiffs' due process claim against defendants Sovas and Field turns on the scope and reach of their power. This power is regulated through a combination of complicated statutes and regulations including, in part, the Environmental Conservation Law and the NYSAPA. *See Berman Enters.,* 3 F.3d at 608.

Given this fact, it is quite possible that the issuance of an injunction against defendants Sovas and Field might disrupt New York's administrative schemes allocating power between agency officials and regulating storage of petroleum and oil products within its borders. This is particular-

ly true in a situation when, as here, New York's courts have not adjudicated the scope of the administrative laws establishing this system. As a result, the Court concludes that, even if dismissal of Plaintiffs' third cause of action is not warranted under the *Pullman* doctrine, because no damages claims remain, it is warranted under *Burford.*

### G. *Plaintiffs' Pendent State Law Claims Against*

Plaintiffs' first pendent state law claim seeks a declaratory judgment that defendants Sovas, Field, and Cahill violated the NYSAPA by, in part, unlawfully requiring Plaintiff to conduct sonar testing before issuing them their permit. Plaintiffs' second state law claim seeks a declaration from this Court that these defendants also violated the rights secured to them under the Due Process Clause of New York State's Constitution. Defendants argue, and this Court agrees, that because these claims raise novel or complex issues of state law, dismissal is warranted under 28 U.S.C. § 1367.

Under 28 U.S.C. § 1367, a Court may decline to exercise supplemental jurisdiction over a supplemental claim if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Although, the Court recognizes that, like the relevant abstention doctrines already discussed, 28 U.S.C. § 1367(c)(1) should not be lightly used to dismiss otherwise valid state law claims, when, as here, those state law claims form the foundation of the federal law claims which the Court has already abstained from deciding, not utilizing 28 U.S.C. § 1367(c)(1) would defeat the very purpose of abstention. In the interests of comity and federalism, the Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' two pendent state law claims and leaves the task of

adjudicating these unanswered state law questions regarding the scope of New York's Department of Environmental Conservation's power where it properly belongs, in New York State court.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiffs' motion for reconsideration is GRANTED; and it is further

ORDERED that Defendants' motion to dismiss is GRANTED in part and DENIED in part; and it is further

ORDERED that all claims against defendants State of New York and the New York State Department of Environmental Conversation are DISMISSED in their entirety with prejudice; and it is further

ORDERED that count 3 is DISMISSED without prejudice to refile; and it is further

ORDERED that counts 4 and 5 are DISMISSED with prejudice; and it is further

ORDERED that pendent state law claims 1 and 2 are DISMISSED without prejudice to refile in state court; and it is further

ORDERED that federal counts 1 and 2 are REINSTATED and the case is reopened as to these two counts; and it is further

ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.